JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Phillip Perdue

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Craig R. Levin & Jason Javie
Two Penn Center, Suite 900, 1500 JFK Blvd. Phila. Pa 19102
(215) 567-7642

## DEFENDANTS
City of Philadelphia, Blanche Carney, Director of Philadelphia Prisons Department, Michelle A. Farrel, Warden, Philadelphia Industrial Correctional Center, Siddharth Sagreiya, M.D., et al.

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** | **IMMIGRATION** | | |
| | ☐ 448 Education / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Section 1983; U.S. Const. amend. VIII; U.S. Const. amend. XIV
Brief description of cause:
Deliberate Indifference to Serious Medical Needs/Punishment of Pretrial Detainee

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
07/13/2020

SIGNATURE OF ATTORNEY OF RECORD
/s/ Jason Javie

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: **500 Cheyney Road, Thornton, Pennsylvania 19373**

Address of Defendant: **1515 Arch Street, Philadelphia, Pennsylvania 19107**

Place of Accident, Incident or Transaction: **Various locations in Phila., Montgomery and Delaware Counties**

---

**RELATED CASE, IF ANY:**

Case Number: N/A          Judge: N/A          Date Terminated: N/A

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?
   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 7/13/2020 _____   _____   309840 (PA)
                                          *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*
                        Must sign here

---

**CIVIL: (Place a √ in one category only)**

**A.     *Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.     *Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, **Jason Javie** , counsel of record *or pro se plaintiff*, do hereby certify:

- ☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- ☐ Relief other than monetary damages is sought.

DATE: 07/13/2020 _____   _____   309840 (PA)
                                          *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*
                        Sign here if applicable

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

*Phillip Perdue*

       v.

*City of Philadelphia, et al.*

CIVIL ACTION

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.     ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)     ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.     (X)

| | | |
|---|---|---|
| 7-13-20 | JASON JAVIE | Phillip Perdue |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-567-7642 | 215-567-9145 | jasonjavie@crldaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PHILLIP PERDUE** <br>                Plaintiff <br><br> vs. <br><br> **CITY OF PHILADELPHIA** <br> **BLANCHE CARNEY, Director of Philadelphia Prisons Department** <br> **MICHELLE FARREL, Warden, Philadelphia Industrial Correctional Center** <br> **SIDDHARTH SAGREIYA, M.D.** <br> **SUSAMMA VARGHESE, RN** <br> **CONSTANCE ORI CHISOM, CRO** <br> **BANG QUANG, RN** <br> **SIGY GEORGE, CRNP** <br> **CORRECTIONS OFFICER L. JENES, an Employee of the Philadelphia Prisons Department** <br> **MONTGOMERY COUNTY DEPARTMENT OF CORRECTIONS** <br> **JULIO A. ALGARIN, WARDEN** <br> **CORPORAL BAKER, an Employee of the Montgomery County Department of Corrections** <br> **CORRECTIONS OFFICER COLBREATH, an Employee of the Montgomery County Department of Corrections** <br> **DELAWARE COUNTY DEPARTMENT OF CORRECTIONS** <br> **JOHN DOE 1-10** <br> **JANE DOE 1-10** <br>                Defendants | Civil Action No.:_____ <br><br> **CVIL COMPLAINT** <br><br> **Section 1983** <br><br> **\*Jury Trial Demanded\*** |

Plaintiff, Phillip Perdue, by and through his attorneys, Craig Levin and Jason Javie, hereby alleges and avers:

## I.   INTRODUCTION

1.     The Plaintiff in this action seeks monetary compensation from the Defendants for violating his constitutional rights as well as supplemental claims for violations of Pennsylvania

common law.

2.     In essence, the Plaintiff seeks compensation for harms suffered because the Defendants declined to provide him with necessary medical treatment while he was a pretrial detainee in the Philadelphia, Montgomery and Delaware County Departments of Corrections.

3.     Specifically, after suffering a ruptured meniscus and displaced patella in July of 2018, Mr. Perdue did not receive the necessary surgical intervention until November of 2019 and was thereafter denied necessary and required rehabilitative treatment.

4.     The results of this have been catastrophic.

5.     Mr. Perdue has a permanently deformed knee and will require additional medical treatment to address the same in the future, including additional surgeries and/or a total knee replacement.

6.     Plaintiff brings suit for the violation of his Eighth and Fourteenth Amendment rights under 42 U.S.C. § 1983.

## II.  JURISDICTION AND VENUE

7.     This Court has jurisdiction by virtue of 28 U.S.C. § 1331 (relating to federal question jurisdiction) and 28 U.S.C. § 1367 (relating to supplemental jurisdiction).

8.     Venue lies in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(2) insofar as the events or omissions giving rise to this claim occurred in the Eastern District of Pennsylvania.

9.     This action arises under the United States Constitution as applied to state and/or local authorities through 42 U.S.C. § 1983.

## III. PARTIES

10.     The Plaintiff in this case is Phillip Perdue[1] who at all relevant times was a pretrial detainee in the custody of the Philadelphia, Montgomery and Delaware County Correctional Departments.

11.     As a pretrial detainee who had not been found guilty of a crime, Mr. Perdue had a constitutional right to be free from punishment which included a right to adequate medical care as guaranteed by the Fourteenth Amendment's due process clause.

12.     Defendant, City of Philadelphia, is local municipal government run by Home Rule Charter with principle place of business located at 1515 Arch Street, Philadelphia, Pennsylvania 19102.

13.     At all relevant times, the City of Philadelphia had a Prisons Department responsible for, *inter alia*, the operation of the Philadelphia Industrial Correctional Facility.

14.     Defendant, Blanche Carney is the Director of the Philadelphia Prisons Department and has a principal place of business located at 1515 Arch Street, Philadelphia, Pennsylvania 19102.

15.     Defendant, Michelle Farrell, is the Warden of the Philadelphia Industrial Correctional Center and has a principal place of business located at 1515 Arch Street, Philadelphia, Pennsylvania 19102.

16.     Defendant, Siddharth Sagreiya, M.D., is medical doctor providing services to, *inter alia*, the inmates at Philadelphia Industrial Correctional Facility.

17.     Defendant, Siddharth Sagreiya, M.D., is employed by either Philadelphia Prisons

---

[1] Mr. Perdue's given name is "Elihue." However, he has used the name Phillip Perdue for years. For clarity, he will be referred to as "Phillip Perdue" throughout this complaint.

Department or by Corizon Health and has a principal place of business located at either 1515 Arch Street, Philadelphia, Pennsylvania 19102 or 8201 State Road, Philadelphia, Pennsylvania 19136.

18.     Defendant Sagreiya is also responsible for overseeing the Defendant Nursing Practitioners and Defendant Nurses that work inside of the Philadelphia Prisons.

19.     Defendant, Susamma Varghese is a registered nurse providing services to, *inter alia*, the inmates at Philadelphia Industrial Correctional Facility.

20.     Defendant, Susamma Varghese is employed by either Philadelphia Prisons Department or by Corizon Health and has a principal place of business located at either 1515 Arch Street, Philadelphia, Pennsylvania 19102 or 8201 State Road, Philadelphia, Pennsylvania 19136.

21.     Defendant, Constance Ori Chisom, CRO, is a medical professional providing services to, *inter alia*, the inmates at Philadelphia Industrial Correctional Facility.

22.     Defendant, Constance Ori Chisom, CRO, is employed by either Philadelphia Prisons Department or by Corizon Health and has a principal place of business located at either 1515 Arch Street, Philadelphia, Pennsylvania 19102 or 8201 State Road, Philadelphia, Pennsylvania 19136.

23.     Defendant, Bang Quang, RN, is a registered nurse providing services to, *inter alia*, the inmates at Philadelphia Industrial Correctional Facility.

24.     Defendant, Bang Quang, RN, is employed by either Philadelphia Prisons Department or by Corizon Health and has a principal place of business located at either 1515 Arch Street, Philadelphia, Pennsylvania 19102 or 8201 State Road, Philadelphia, Pennsylvania 19136.

25.     Defendant, Sigy George, CRNP, is a nurse practicioner providing services to, *inter alia*, the inmates at Philadelphia Industrial Correctional Facility.

26.     Defendant, Sigy George, CRNP, is employed by either Philadelphia Prisons

Department or by Corizon Health and has a principal place of business located at either 1515 Arch Street, Philadelphia, Pennsylvania 19102 or 8201 State Road, Philadelphia, Pennsylvania 19136.

27.     Defendant, Corrections Officer L. Jenes is an employee of the Philadelphia Prisons Department with a principal place of business located at either 1515 Arch Street, Philadelphia, Pennsylvania 19102.

28.     The Montgomery County Department of Corrections is a Department of Montgomery County Pennsylvania, a local government entity and has a principal place of business at 60 Eagleville Road, Eagleville, Pennsylvania 19403.

29.     Defendant, Warden Julio A. Algarin, is the Warden of the Montgomery County Correctional Facility and has a principal place of business at 60 Eagleville Road, Eagleville, Pennsylvania 19403.

30.     Defendant, Corporal Baker, is an employee of the Montgomery County Department of Corrections and has a principal place of business at 60 Eagleville Road, Eagleville, Pennsylvania 19403.

31.     Defendant, Corrections Officer Colbreth, is an employee of the Montgomery County Department of Corrections and has a principal place of business at 60 Eagleville Road, Eagleville, Pennsylvania 19403.

32.     Defendant, Delaware County Department of Corrections, is a department of Delaware County, Pennsylvania, a local government entity and has a principal place of business located at 500 Cheyney Road, Thornton, Pennsylvania 19373.

33.     Defendant John Doe 1, is a therapist working for or providing rehabilitative services to the Delaware County Department of Corrections and is sued in his individual and official capacities.

34.     Defendants John Doe 2-10 are unknown employees or contractors of the City of Philadelphia, Montgomery County Department of Corrections and/or the Delaware County Department of Corrections that caused, contributed to and/or facilitated the harms against the Plaintiff.

35.     Defendants Jane Doe 1-10 are unknown employees or contractors of the City of Philadelphia, Montgomery County Department of Corrections and/or the Delaware County Department of Corrections that caused, contributed to and/or facilitated the harms against the Plaintiff.

36.     These unknown defendants have yet to be identified by name but will be added once their identity has been ascertained.

## IV. <u>FACTUAL BACKGROUND</u>

37.     Plaintiff reincorporates all preceding paragraphs.

38.     Beginning sometime in 2017 and continuing through November of 2018, the Plaintiff was a pretrial detainee in the custody of the Philadelphia Prison System.

39.     On or about July 14, 2018, the Plaintiff was housed at the Philadelphia Industrial Correctional Center (colloquially referred to as "PICC").

40.     On or about July 14, 2018, the Plaintiff sustained an injury to his right knee while playing basketball.

41.     As a result of this injury, the Plaintiff suffered immediate pain, discomfort and swelling.

42.     The Plaintiff reported these injuries immediately to Correctional Officer C. Peterkin.

43.     The Plaintiff then reported to the medical center and was evaluated by Defendant Bang Quang.

44.     During his evaluation, Defendant Quang noted bruising and swelling as well as an "obvious abnormality/asymmetry" above the right knee.

45.     Defendant Quang contacted Defendant Constance Chisom Orji and the decision was made to provide Mr. Perdue with pain medication and an ace bandage.

46.     Additionally, Mr. Perdue was referred for an onsite x-ray of his knee.

47.     On July 23, 2018, Plaintiff returned to the medical center again complaining of pain in his leg that started on July 14, 2018.

48.     The Plaintiff was evaluated by Defendants Sigy George and Siddharth Sagreiya.

49.     During this evaluation, right knee swelling and patellar dislocation were noted.

50.     On July 20, 2018, Defendant Michelle Farrell was advised of Mr. Perdue's condition and was requested to ensure that he receive medical treatment.

51.     An x-ray was ordered to take place on July 24, 2018.

52.     On information and belief, no x-ray occurred on July 24, 2018.

53.     On July 27, 2018, Mr. Perdue again reported to medical complaining of ongoing pain in his right knee.

54.     On August 6, 2018, Plaintiff was transported to Rothman Orthopedics and evaluated by Dr. Charles F. Denny, M.D.

55.     Dr. Denny suspected Mr. Perdue to have suffered a rupture of his patella tendon, ordered an MRI and directed a follow up with a surgeon.

56.     While at Rothman, Mr. Perdue's right knee was x-rayed revealing his patella was dislocated and resting at the base of his thigh.



57.     Dr. Denny opined that Mr. Perdue required a repair of his extensor mechanism, directed that he follow up with a knee sports surgeon and concluded that Mr. Perdue would be unable to walk normally without surgical intervention.

58.     When Mr. Perdue returned to PICC, he was interviewed and reported Dr. Denny's conclusions.

59.     The questionnaire used by the City of Philadelphia Prison System did not include questions relating to the need for follow up treatment or surgical intervention.

60.     The Department did not obtain copies of the studies or any of Dr. Denny's reports recommending the surgical consult or Dr. Denny's opinion that Mr. Perdue would be unable to walk normally without surgical intervention.

61.     Defendant Sagrieya ordered an MRI and a surgical consult pending approval of the Philadelphia Prison System on August 7, 2018.

62.     Approval was never given and Mr. Perdue was never transported for an MRI or a surgical consult.

63.     Plaintiff made numerous and repeated requests that he be taken for a visit, but these requests went unheeded and the Philadelphia Prison System did not send him.

64.     On numerous occasions, employees of the Philadelphia Prison System erroneously or dishonestly reported that the Plaintiff was *refusing* medical care when in fact Plaintiff did not do so.

65.     Such actions were permitted to occur due to a policy in effect which is described in more detail below.

66.     On September 10, 2018, the Plaintiff went to medical services for the purpose of being transported to an offsite clinic.

67.     While there, asked permission to retrieve his sneakers as he had difficulty walking in his prison issued shoes.

68.     Defendant Sigy George, exercising the unfettered discretion afforded to medical staff by the City of Philadelphia's policy or practice, deemed that to be a refusal of medical treatment.

69.     In reality, the Plaintiff did not refuse treatment.

70.     Defendant Corrections Office L. Jennes signed as a witness.

71.     On October 16, 2018, the Plaintiff went to medical services without first having made a sick call.

72.     While there, he inquired of Defendant Bang Quan when he would be taken for surgery on his knee.

73.     Defendant Bang Quan refused to provide Mr. Perdue with that information and Mr. Perdue left.

74.     Exercising the unfettered discretion afforded to medical staff by the City of

Philadelphia's policy or practice, Defendant Bang Quan deemed that to be a refusal of medical treatment even though Mr. Perdue refused to sign a form to that effect.

75.     An unknown defendant signed as a witness.

76.     In reality, the Plaintiff did not refuse treatment.

77.     On October 25, 2018, Mr. Perdue – still in excruciating pain and in need of surgery – asked his lawyer to send a letter to the Warden of PICC.

78.     That same day, a letter was sent to Defendant Michelle Farrell explaining the severity of Mr. Perdue's medical condition and again requesting that he receive the medical treatment that he desperately needed.

79.     Mr. Perdue still received no medical treatment.

80.     On or about November 7, 2018, Mr. Perdue was transferred to the Montgomery County Correctional Facility.

81.     In connection with that transfer, Defendant Susamma Varghese prepared -pursuant to County policy – a medical summary to send to the receiving prison.

82.     The form did not include any information about Mr. Perdue's diagnosis or urgent need for surgical intervention.

83.     As a result, the Montgomery County Correctional Facility was never advised of Mr. Perdue's serious medical needs by the Philadelphia Prisons Department and it became incumbent upon Mr. Perdue to explain the same during his medical intake.

84.     This resulted in further delay in Mr. Perdue receiving medical treatment.

85.     Upon arriving in Montgomery County, a medical intake evaluation was conducted during which time Mr. Perdue explained his urgent need for medical treatment.

86.     However, because medical summary provided by the Philadelphia Prisons

Department did not reflect this, the decision was made to send Mr. Perdue for x-rays at Einstein on or about November 15, 2018.

87.     Notwithstanding the x-ray revealing the displaced knee cap, arrangements were not immediately made to transfer Mr. Perdue for surgery.

88.     Defendant Julio M. Algarin was contacted on no less than three occasions by lawyers working for Mr. Perdue in an attempt to get Mr. Perdue the surgical treatment he required.

89.     Defendant Deputy Warden Sean McGee was likewise contacted and advised that Mr. Perdue was not receiving treatment.

90.     On an unknown date after his arrival, arrangements were made to escort Mr. Perdue to have his medical needs addressed.

91.     Prior to his transfer, he was placed into handcuffs by Defendants Corporal Baker and/or Corrections Officer Colbreath.

92.     When Mr. Perdue requested that the handcuffs be loosened as he was uncomfortable, Defendants Corporal Baker and Corrections Officer Colbreath informed Mr. Perdue that they considered his comments to be a refusal of medical treatment.

93.     The determination made by these officers had no basis in law or fact and they did not consult a medical professional before making this decision.

94.     The determination was likewise not made pursuant to any official guidelines issued by the Montgomery County Department of Corrections as Corrections Officers are given sole discretion to make these determinations.

95.     In reality, Mr. Perdue never refused medical treatment and in fact wanted to receive the medical treatment needed to walk normally again.

96.     Pursuant to official policy or procedure of the Montgomery County Department of

Corrections, Mr. Perdue was not afforded an appeal or grievance procedure as Corrections Officers are given sole discretion to make these determinations.

97.     Mr. Perdue ultimately received the necessary surgery on November 19, 2019, 1 year, 4 months and 5 days after his injury.

98.     His discharge instructions included, *inter alia*, directions that he attend physical therapy.

99.     Subsequent to that surgery and discharge, Mr. Perdue was transferred to the Delaware County Correctional Facility.

100.     Notwithstanding the discharge instructions referenced above, Mr. Perdue was not given the appropriate rehabilitative medicine or provided with the appropriate rehabilitative equipment.

101.     As such, at his two month follow up appointment, his surgeon concluded that his recovery had been unsuccessful and that additional surgery would be futile given the conditions to which he was exposed after surgery.

102.     All of this amounted to punishment of a pretrial detainee in violation of the Fourteenth Amendment to the United States Constitution.

103.     Alternatively, this amounted to deliberate indifference of a serious medical need and accordingly cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

**COUNT 1:**

**PHILLIP PERDUE VS. CITY OF PHILADELPHIA AND BLANCHE CARNEY**

**42 U.S.C. § 1983; U.S. CONST. AMEND. VIII; US. CONST. AMEND. XIV**

104. The Plaintiff reincorporates all preceding paragraphs.

105. Defendant City of Philadelphia is a local municipal government established by Home Rule Charter.

106. Defendant City of Philadelphia is sued as a local government pursuant to 42 U.S.C. § 1983 and *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978) and its progeny.

107. The Home Rule Charter establishes a Philadelphia Prisons Department which, pursuant to Home Rule Charter, has general supervision over, and direction and control of the management of, all City correctional facilities owned or operated by the City of Philadelphia.

108. The Home Rule Charter likewise tasks the Philadelphia Prisons Department with implementing standards governing the administration of correctional facilities and the betterment of their inmates.

109. It is most respectfully submitted that several of these polices resulted in and were the driving force behind the deprivation of Mr. Perdue's rights, to wit, the violation of his Eighth and/or Fourteenth Amendment rights as described above.

### a. **Policy Concerning Referrals to Surgical Specialists**

110. Plaintiff reincorporates all preceding paragraphs.

111. Sometime prior to July 14, 2018, Blanche Carney, the Director of the Philadelphia Prisons Department or her predecessor, created, adopted or caused to be created or adopted a policy and procedure to be followed when an inmate is in need of a surgical referral or surgical treatment.

112. In the event the policy was created or caused to be created by her predecessor,

13

Director Carney affirmatively and knowingly chose to keep the policy in effect upon becoming the Director.

113. The Director of the Philadelphia Prisons Department is empowered to make these decisions and acted intentionally in doing so.

114. This policy and procedure is either a standalone policy or part of a more broad policy governing the medical treatment of inmates.

115. In pertinent part, the policy requires any referral to a specialist to be approved by departmental hierarchy.

116. That is, when a physician determines that an inmate needs surgery, the referral must be approved and carried out by a corrections department employee.

117. In addition, this policy affords sole discretion to the staff member making the decision and does not afford the inmate an appellate or grievance procedure to challenge a decision disapproving a medical referral.

118. Nor does the policy require that a medical professional make the requisite determination.

119. Rather, the final decision whether to send an inmate for an outside medical visit is not made by a medically-trained professional.

120. Following his injury in July and his appointment at Rothman Orthopedics on August 6, 2018, Defendant Dr. Siddharth Sagreiya, M.D. referred Mr. Perdue to an orthopedic surgeon.

121. Defendant Sagreiya's referral was, pursuant to Philadelphia Prisons Department policy, was sent for approval to an unknown official or employee working for the Philadelphia Prisons Department.

122. Ultimately, that unknown official or employee declined to approve Mr. Perdue's referral to an orthopedic surgeon.

123. On information and belief, Defendant Michelle Farrell declined to approve Mr. Perdue's referral and/or ignored the October 25, 2018 communication referenced above.

124. This decision was made notwithstanding the recommendation from Dr. Denny of Rothman Orthopedics and the referral by Defendant Sagreiya.

125. Pursuant to the aforementioned policy, Mr. Perdue was not afforded a procedure to challenge this decision and was never informed why approval was denied.

126. No explanation for this denial is contained in Mr. Perdue's medical file.

127. During this period of time, Mr. Perdue required and wanted to receive the surgical intervention that was needed to repair his knee.

128. At least since August 6, 2018 and possibly before, the Philadelphia Prisons Department was in possession of paperwork or otherwise had knowledge that Mr. Perdue needed surgical intervention on his knee.

129. At least since August 6, 2018 and possibly before, the Philadelphia Prisons Department was in possession of paperwork or otherwise had knowledge that Mr. Perdue would be unable to walk normally without surgical intervention on his knee.

130. Nevertheless, the City's employee(s) acting pursuant to the policy created by the Director were deliberately indifferent to these serious medical needs and denied Mr. Perdue access to this necessary medical treatment by falsely or erroneously determining he had refused medical treatment.

131. Mr. Perdue was unable to challenge these decisions insofar as the individual actors were given sole discretion by the above-referenced policy and because no grievance or appellate

procedure was available.

132. This deliberate indifference amounted to punishment of a pretrial detainee in violation of the Fourteenth Amendment to the United States Constitution and/or cruel and unusual punishment in violation of the Eighth Amendment to the United State Constitution.

133. Thus, the above-referenced policy was the driving force behind the deprivation of Mr. Purdue's rights under the Fourteenth and/or Eighth Amendments to the United States Constitution.

134. As a result of this, Mr. Perdue's eventual surgery has not been successful, he continues to suffer pain, and will ultimately require additional surgeries in the future.

### b. **Policy Concerning Refusal of Medical Treatment**

135. Plaintiff reincorporates all preceding paragraphs.

136. Sometime prior to July 14, 2018, Blanche Carney, the Director of the Philadelphia Prisons Department or her predecessor, created, adopted or caused to be created or adopted a policy and procedure to be followed when an inmate is thought to have declined medical treatment.

137. In the event the policy was created or caused to be created by her predecessor, Director Carney affirmatively and knowingly chose to keep the policy in effect upon becoming the Director.

138. The Director of the Philadelphia Prisons Department is empowered to make these decisions and acted intentionally in doing so.

139. This policy and procedure is either a standalone policy or part of a more broad policy governing the medical treatment of inmates.

140. Part of this policy included the creation of a form to be used when an inmate is

purportedly declining medical treatment.

141.    Among other things, this form is not accompanied by any standards or guidelines for determining what in fact should constitute a refusal of treatment.

142.    Nor does the form require that an inmate's signature be included or that a copy be provided to the inmate.

143.    In addition, this policy affords sole discretion to the staff member making the decision and does not afford the inmate an appellate or grievance procedure to challenge a determination that he or she has refused medical treatment.

144.    Nor does the policy require that a medical professional make the requisite determination.

145.    The lack of guidelines, strictures and/or controls in this regard allowed for abuses by individual employees as well as the deprivation of Mr. Perdue's rights.

146.    In addition, this policy allowed for employees to vindictively deprive inmates of access to medical care while claiming that the inmate had in fact declined medical treatment.

147.    On several occasions between Mr. Perdue's July 14, 2018 injury and his November 2018 transfer to Montgomery County, employees for the City of Philadelphia intentionally deprived Mr. Perdue from receiving medical treatment by erroneously concluding that Mr. Perdue refused treatment when in fact he had not done so.

148.    Pursuant to the aforementioned policy, Mr. Perdue was not afforded a procedure to challenge these determinations and was in some cases never informed why he was deemed to have refused medical treatment.

149.    During this period of time, Mr. Perdue required and wanted to receive the surgical intervention that was needed to repair his knee.

150. At least since August 6, 2018 and possibly before, the Philadelphia Prisons Department was in possession of paperwork or otherwise had knowledge that Mr. Perdue needed surgical intervention on his knee.

151. At least since August 6, 2018 and possibly before, the Philadelphia Prisons Department was in possession of paperwork or otherwise had knowledge that Mr. Perdue would be unable to walk normally without surgical intervention on his knee.

152. Nevertheless, the City's employees acting pursuant to the policy created by the Director were deliberately indifferent to these serious medical needs and denied Mr. Perdue access to this necessary medical treatment by falsely or erroneously determining he had refused medical treatment.

153. Mr. Perdue was unable to challenge these decisions insofar as the individual actors were given sole discretion by the above-referenced policy and because no grievance or appellate procedure was available.

154. This deliberate indifference amounted to punishment of a pretrial detainee in violation of the Fourteenth Amendment to the United States Constitution and/or cruel and unusual punishment in violation of the Eighth Amendment to the United State Constitution.

155. Thus, the above-referenced policy was the driving force behind the deprivation of Mr. Purdue's rights under the Fourteenth and/or Eighth Amendments to the United States Constitution.

156. As a result of this, Mr. Perdue's eventual surgery has not been successful, he continues to suffer pain, and will ultimately require additional surgeries in the future.

### c.  Policy concerning Inmate Transfers

157.   The Plaintiff reincorporates all preceding paragraphs.

158.   Sometime prior to November 7, 2018, Blanche Carney, the Director of the Philadelphia Prisons Department or her predecessor, created, adopted or caused to be created or adopted a policy and procedure to be followed when an inmate is transferred from the Philadelphia Prison Department to another prison system.

159.   This policy includes an official form that is filled out by medical personnel when inmates are transferred from the Philadelphia Prisons Department to another prison system.

160.   Pursuant to prison policy, this form is filled out by medical personnel for the purpose of transmitting health data concerning the inmate to the receiving prison system.

161.   The form in question does not permit Philadelphia Prisons Department staff to advise the receiving prison system of serious medical needs and/or a prisoner's current need for surgical intervention.

162.   The policy in question also does not require the Philadelphia Prisons Department to transmit any medical records (including diagnostic films) to the receiving institution.

163.   On November 7, 2018, Defendant Susamma Verghese completed the form pursuant to the above-referenced policy.

164.   The form did not include any information about Mr. Perdue's torn meniscus, dislocated patella or his urgent need for surgical intervention.

165.   Nor was the form accompanied by the diagnostic films from Mr. Perdue's August, 6, 2018 visit to Rothman Orthopedics.

166.   As such, Montgomery County were not put on notice of Mr. Perdue's urgent medical needs.

167.     This had the effect of delaying Mr. Perdue's surgery because Montgomery County sent him for another x-ray of his knee shortly after he arrived.

168.     Because the Philadelphia Prisons Department was unequivocally on notice of Mr. Perdue's serious medical needs, and because the policies and procedures referenced above resulted in punishment of a pretrial detainee in violation of the Fourteenth Amendment to the United States Constitution and/or amounted to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

169.     It is most respectfully submitted that the above-referenced polices allowed for, resulted in and were the driving force behind the deprivation of Mr. Perdue's rights, to wit, the deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights and/or punishment in violation of his Fourteenth Amendment rights as described above.

**WHEREFORE,** Plaintiff, Phillip Perdue demands judgment in his favor against the Defendant, City of Philadelphia.

## COUNT 2:

### PHILLIP PERDUE VS. MICHELLE FARRELL

### 42 U.S.C. § 1983, U.S. CONST. AMEND. VIII; US. CONST. AMEND. XIV

170.     Plaintiff reincorporates all preceding paragraphs.

171.     Defendant, Michelle Farrell, is the Warden of the Philadelphia Industrial Correctional Center.

172.     At all relevant times, Defendant Farrell was acting under color of law and is sued here in her official and individual capacities.

173.     It is alleged that while acting under color of law, Defendant deprived Mr. Perdue

of a right under the U.S. Constitution, *to wit*, his Fourteenth Amendment right to be free from punishment as a pretrial detainee and/or his Eighth Amendment right to be free from cruel and unusual punishments.

174.    Defendant Farrell was specifically advised that Mr. Perdue sustained a serious injury and was in need of medical treatment.

175.    Defendant Farrell also knew that Mr. Perdue was in extreme pain as a result of the accident.

176.    Notwithstanding this knowledge and Warden Farrell's unquestionable ability to intercede, Warden Farrell did not do so.

177.    This refusal was not based on a legitimate penological reason.

178.    The denial of medical care in this case amounted to punishment of a pretrial detainee in violation of the Eleventh Amendment.

179.    Alternatively, Defendant Farrell realized that a substantial risk of serious harm to Mr. Perdue existed but disregarded that risk

180.    As such, Mr. Perdue spent several months as an inmate under the care of Warden Farrell without receiving medical treatment.

181.    It is further alleged that this delay caused and/or contributed to the lack of success in Mr. Perdue's eventual surgery.

182.    The delay that occurred in this case resulted in the wanton infliction of pain.

**WHEREFORE,** Plaintiff, Phillip Perdue demands judgment in his favor against the Defendant, Michelle Farrell.

## COUNT 3:

## PHILLIP PERDUE VS. DEFENDANT BANG QUANG

## 42 U.S.C. § 1983, U.S. CONST. AMEND. VIII; US. CONST. AMEND. XIV

183.   Plaintiff reincorporates all preceding paragraphs.

184.   Defendant, Bang Quang, is a registered nurse working at the Philadelphia Industrial Correctional Center

185.   At all relevant times, Defendant Quang was acting under color of law and is sued here in his official and individual capacities.

186.   It is alleged that while acting under color of law, Defendant deprived Mr. Perdue of a right under the U.S. Constitution, *to wit*, his Fourteenth Amendment right to be free from punishment as a pretrial detainee and/or his Eighth Amendment right to be free from cruel and unusual punishments.

187.   Defendant Quang was specifically advised that Mr. Perdue sustained a serious injury and was in need of medical treatment.

188.   Defendant Quang also knew that Mr. Perdue was in extreme pain as a result of the accident.

189.   Notwithstanding this knowledge, on August 16, 2018, Defendant Quang filled out an official form alleging that Mr. Perdue refused medical treatment.

190.   His decision to do so was not based on a legitimate medical reason.

191.   In fact, Mr. Perdue was inquiring when he would be taken for surgery on his leg as described above.

192.   This action had the effect of denying Mr. Perdue medical care in this case  and amounted to punishment of a pretrial detainee in violation of the Eleventh Amendment.

193. Alternatively, Defendant Quang realized that a substantial risk of serious harm to Mr. Perdue existed but disregarded that risk

194. As such, Mr. Perdue spent several months as an inmate without receiving medical treatment.

195. It is further alleged that this delay caused and/or contributed to the lack of success in Mr. Perdue's eventual surgery.

196. The delay that occurred in this case as a result of Defendant Quang's actions resulted in the wanton infliction of pain.

**WHEREFORE,** Plaintiff, Phillip Perdue demands judgment in his favor against the Defendant, Bang Quang.


## COUNT 4:

## PHILLIP PERDUE VS. DEFENDANTS SIGY GEORGE & CORRECTIONS OFFICER L. JENES

## 42 U.S.C. § 1983, U.S. CONST. AMEND. VIII; US. CONST. AMEND. XIV

197. Plaintiff reincorporates all preceding paragraphs.

198. Defendant, Sigy George, is a nurse practicioner working at the Philadelphia Industrial Correctional Center.

199. Defendant Corrections Officer L. Jenes was an employee of the Philadelphia Prisons Department working at the Philadelphia Industrial Correctional Center.

200. At all relevant times, Defendants George and Jenes were acting under color of law and is sued here in their official and individual capacities.

201. It is alleged that while acting under color of law, Defendants deprived Mr. Perdue

of a right under the U.S. Constitution, *to wit*, his Fourteenth Amendment right to be free from punishment as a pretrial detainee and/or his Eighth Amendment right to be free from cruel and unusual punishments.

202. Defendant George was specifically advised that Mr. Perdue sustained a serious injury and was in need of medical treatment or was otherwise aware of this fact.

203. Defendant George also knew that Mr. Perdue was in extreme pain as a result of the accident.

204. Notwithstanding this knowledge, on September 10, 2018, Defendant George filled out an official form alleging that Mr. Perdue refused medical treatment.

205. That same date, Defendant Jenes falsely signed as a witness.

206. The decision to do so was not based on a legitimate medical reason.

207. In fact, Mr. Perdue did not refuse but instead asked whether he could wear sneakers to his appointment due to the pain he was suffering.

208. These actions had the effect of denying Mr. Perdue medical care in this case and amounted to punishment of a pretrial detainee in violation of the Eleventh Amendment.

209. Alternatively, Defendant George realized that a substantial risk of serious harm to Mr. Perdue existed but disregarded that risk

210. As such, Mr. Perdue spent several months as an inmate without receiving medical treatment.

211. It is further alleged that this delay caused and/or contributed to the lack of success in Mr. Perdue's eventual surgery.

212. The delay that occurred in this case as a result of Defendants George and Jenes' actions resulted in the wanton infliction of pain.

**WHEREFORE,** Plaintiff, Phillip Perdue demands judgment in his favor against the Defendants, Sigy George and Corrections Officer L. Jenes.


## COUNT 5:

## PHILLIP PERDUE VS. MONTGOMERY COUNTY

## DEPARTMENT OF CORRECTIONS

### 42 U.S.C. § 1983, U.S. CONST. AMEND. VIII; US. CONST. AMEND. XIV

213.    Plaintiff reincorporates all preceding paragraphs.

214.    Defendant, Montgomery County is a local government that operates the Montgomery County Correctional Facility through its department, the Montgomery County Department of Corrections.

215.    Defendant Montgomery County is sued as a local government pursuant to 42 U.S.C. § 1983 and *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978) and its progeny.

216.    The Warden of the Montgomery County Correctional Facility is Julio Algarin.

217.    Sometime prior to November 1, 2018, Julio Algarin, the Warden of the Montgomery County Correctional Facility or his predecessor, created, adopted or caused to be created or adopted a policy and procedure to be followed when an inmate is thought to have declined medical treatment.

218.    If the policy pre-existed Algarin's appointment as Warden, he deliberately decided to keep said policy in place.

219.    The Warden of the Montgomery County Correctional Facility is empowered to make these decisions and acted intentionally in doing so.

220.    This policy and procedure is either a standalone policy or part of a more broad

policy governing the medical treatment of inmates.

221.    Under this policy, corrections officers are empowered to determine whether an inmate has refused medical treatment.

222.    This policy does not set forth specific guidelines or considerations for officials making this decision, nor does it require that these officials consult with medical professionals.

223.    Rather, this policy affords sole discretion to the staff member making the decision and does not afford the inmate an appellate or grievance procedure to challenge a determination that he or she has refused medical treatment.

224.    The lack of guidelines, strictures and/or controls in this regard allowed for abuses by individual employees as well as the deprivation of Mr. Perdue's rights.

225.    In addition, this policy allowed for employees to vindictively deprive inmates of access to medical care while claiming that the inmate had in fact declined medical treatment.

226.    While Mr. Perdue was a pretrial detainee in Montgomery County, county employees intentionally prevented Mr. Perdue from receiving medical treatment by erroneously concluding that Mr. Perdue refused treatment when in fact he had not done so.

227.    This occurred on or about March 17, 2019.

228.    Pursuant to the aforementioned policy, Mr. Perdue was not afforded a procedure to challenge these determinations and was in some cases never informed why he was deemed to have refused medical treatment.

229.    During this period of time, Mr. Perdue required and wanted to receive the surgical intervention that was needed to repair his knee.

230.    Since his intake in November of 2018, the Montgomery County Department of Corrections was on notice that Mr. Perdue needed surgical intervention on his knee.

231.     Since his intake in November of 2018, the Montgomery County Department of Corrections was had knowledge that Mr. Perdue would be unable to walk normally without surgical intervention on his knee.

232.     Nevertheless, the aforementioned policy permitted staff members to act with deliberate indifference toward Mr. Perdue's serious medical needs, denied Mr. Perdue access to this necessary medical treatment by falsely or erroneously determining he had refused medical treatment and subjected him to punishment.

233.     Mr. Perdue was unable to challenge these decisions insofar as the individual actors were given sole discretion by the above-referenced policy and because no grievance or appellate procedure was available.

234.     This deliberate indifference amounted to punishment of a pretrial detainee in violation of the Fourteenth Amendment to the United States Constitution and/or cruel and unusual punishment in violation of the Eighth Amendment to the United State Constitution.

235.     Thus, the above-referenced policy was the driving force behind the deprivation of Mr. Purdue's rights under the Fourteenth and/or Eighth Amendments to the United States Constitution.

236.     As a result of the delay occasioned by the conduct conducted pursuant to the policy in question, Mr. Perdue was caused to endure unnecessary pain and discomfort and his eventual surgery has not been successful.

237.     Mr. Perdue continues to suffer pain, and will ultimately require additional surgeries in the future.

238.     It is most respectfully submitted that the above-referenced policy allowed for, resulted in and was the driving force behind the deprivation of Mr. Perdue's rights, to wit, the

deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights and/or punishment in violation of his Fourteenth Amendment rights as described above.

**WHEREFORE,** Plaintiff, Phillip Perdue demands judgment in his favor against the Defendant, Montgomery County Department of Corrections.

<strong><u>COUNT 6:</u></strong>

<strong><u>PHILLIP PERDUE VS. JULIO ALGARIN</u></strong>

<strong><u>42 U.S.C. § 1983, U.S. CONST. AMEND. VIII; US. CONST. AMEND. XIV</u></strong>

239.    Plaintiff reincorporates all preceding paragraphs.

240.    Defendant, Julio A. Algarin, is the Warden of the Montgomery County Correctional Facility.

241.    At all relevant times, Defendant Algarin was acting under color of law and is sued here in his official and individual capacities.

242.    It is alleged that while acting under color of law, Defendant deprived Mr. Perdue of a right under the U.S. Constitution, *to wit*, his Fourteenth Amendment right to be free from punishment as a pretrial detainee and/or his Eighth Amendment right to be free from cruel and unusual punishments.

243.    Defendant Algarin was specifically advised that Mr. Perdue sustained a serious injury and was in need of medical treatment.

244.    Defendant Algarin also knew that Mr. Perdue was in extreme pain as a result of the accident.

245.    Notwithstanding this knowledge and Warden Algarin's unquestionable ability to intercede, Warden Algarin did not do so.

246. This refusal was not based on a legitimate penological reason.

247. The denial of medical care in this case amounted to punishment of a pretrial detainee in violation of the Eleventh Amendment.

248. Alternatively, Defendant Algarin realized that a substantial risk of serious harm to Mr. Perdue existed but disregarded that risk

249. As such, Mr. Perdue spent several months as an inmate under the care of Warden Algarin without receiving medical treatment.

250. It is further alleged that this delay caused and/or contributed to the lack of success in Mr. Perdue's eventual surgery.

**WHEREFORE,** Plaintiff, Phillip Perdue demands judgment in his favor against the Defendant, Julio A. Algarin.


## COUNT 7:

## PHILLIP PERDUE VS. CORPORAL BAKER

## AND CORRECTIONS OFFICER COLBREATH

## 42 U.S.C. § 1983, U.S. CONST. AMEND. VIII; US. CONST. AMEND. XIV

251. Plaintiff reincorporates all preceding paragraphs.

252. Defendants Corporal Baker and Corrections Officer Colbreath are employees of Montgomery County, Pennsylvania and were at all relevant times working as corrections officials in the Montgomery County Correctional Facility.

253. At all relevant times, Defendants Corporal Baker and Corrections Officer Colbreath were acting under color of law and are sued here in their official and individual capacities.

254. It is alleged that while acting under color of law, Defendants deprived Mr. Perdue

of a right under the U.S. Constitution, *to wit*, his Fourteenth Amendment right to be free from punishment as a pretrial detainee and/or his Eighth Amendment right to be free from cruel and unusual punishments.

255.  Sometime in March of 2019, Defendants Corporal Baker and Corrections Officer Colbreath were directed to transport Mr. Perdue to receive surgical treatment.

256.  Defendants Corporal Baker and Corrections Officer Colbreath were assigned to transport and/or accompany Mr. Perdue to his treatment pursuant to their position at the Montgomery County Correctional Facility.

257.  At the time, Defendants Corporal Baker and Corrections Officer Colbreath knew or should have know that Mr. Perdue needed the surgical treatment on his knee.

258.  Prior to transporting Mr. Perdue, Defendants Corporal Baker and Corrections Officer Colbreath placed Mr. Perdue in arm and leg restraints.

259.  Mr. Perdue complained that the restraints were too tight and asked that they be loosened.

260.  For no reason other than retaliation and/or malicious intent, Defendants Corporal Baker and Corrections Officer Colbreath informed Mr. Perdue that his request was being deemed a refusal of medical treatment.

261.  In reality, Mr. Perdue did not refuse medical treatment and in fact wished to receive medical attention for his knee.

262.  Defendants Corporal Baker and Officer Colbreath declined to take Mr. Perdue to seek medical treatment and, on information and belief, filled out paperwork falsely indicating that Mr. Perdue declined medical treatment.

263.  There was no legitimate, penological reason for the decision not to take Mr. Perdue

to his medical appointment.

264.    As a result of this conduct, Mr. Perdue was forced to sustain unnecessary pain.

265.    Likewise, this delay in treatment served to further complicate Mr. Perdue's injury and the delay has worked to frustrate his recovery.

266.    The conduct of Defendants Corporal Baker and Corrections Officer Colbreath amounted to punishment of a pretrial detainee in violation of the Fourteenth Amendment insofar as they denied Mr. Perdue access to medical treatment.

267.    Alternatively, and insofar as Defendants Corporal Baker and Corrections Officer Colbreath were aware of Mr. Perdue's serious medical issues, their conduct amounted to deliberate indifference to the same in violation of the Eighth Amendment to the United States Constitution.

**WHEREFORE,** Plaintiff, Phillip Perdue demands judgment in his favor against the Defendants, Defendants Corporal Baker and Corrections Officer Colbreath.


## COUNT 8:

## PHILLIP PERDUE VS. DELAWARE COUNTY DEPARTMENT OF CORRECTIONS

## 42 U.S.C. § 1983, U.S. CONST. AMEND. VIII; US. CONST. AMEND. XIV

268.    Plaintiff reincorporates all preceding paragraphs.

269.    The Defendant, Delaware County, operates the George H. Hill Correctional facility.

270.    Defendant Delaware County is sued as a local government pursuant to 42 U.S.C. § 1983 and *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978) and its progeny.

271.    Shortly after receiving his surgery, Plaintiff Phillip Perdue was transferred from the Montgomery County Correctional Facility to the George H. Hill Correctional Facility.

272.    At the time of his transfer, Mr. Perdue was still a pretrial detainee.

273.    Sometime prior to January 1, 2020 and in any event before Mr. Perdue's transfer, Donna Melon, the Acting Warden or her predecessor, created, adopted or caused to be created or adopted a policy and procedure to be followed for inmates needing rehabilitative medical treatment following .

274.    As Acting Warden, Donna Melon is empowered to make these decisions and acted intentionally in doing so.

275.    To the extent that the policy predated Donna Melon's appointment as Warden, she affirmatively kept the policy in place upon her appointment.

276.    This policy and procedure is either a standalone policy or part of a more broad policy governing the medical treatment of inmates.

277.    The policy adopted is wholly insufficient to effectuate the delivery of rehabilitative services to the inmates.

278.    Pursuant to the policy, inmates are not transported to a facility or facilities with adequate equipment.

279.    Rather, the policy provides that rehabilitation services are handled in-house and generally involves a therapist meeting periodically with inmates and directing these inmates to conduct self-guided rehabilitation.

280.    Moreover, there is no way to opt out, *i.e.*, this is the only rehabilitative regimen available to prisoners in the Delaware County Prison System.

281.    Prisoners requiring rahibilitative treatment are not provided with rehabilitative equipmennt or individual or group sessions with a specialist beyond the consultative sessions already described.

282.    After his surgery, Mr. Perdue met several times with the therapist in a fashion

consistent with the foregoing policy.

283. Pursuant to the aforementioned policy, Mr. Perdue was not afforded an opportunity to opt out and attend treatment outside of the prison.

284. During this period of time, Mr. Perdue required and wanted to receive the necessary rehabilitative treatment.

285. Since his arrival at George H. Hill, county officials and employees knew of his need for rehabilitative services.

286. Nevertheless, County employees acting pursuant to the policy described were deliberately indifferent to these serious medical needs and denied Mr. Perdue access to this necessary medical treatment and instead limited his treatment to the consultative treatments described.

287. This deliberate indifference amounted to punishment of a pretrial detainee in violation of the Fourteenth Amendment to the United States Constitution and/or cruel and unusual punishment in violation of the Eighth Amendment to the United State Constitution.

288. The above-referenced policy was the driving force behind the deprivation of Mr. Purdue's rights under the Fourteenth and/or Eighth Amendments to the United States Constitution.

289. Mr. Perdue was subsequently transported for a follow up with his surgeon.

290. The surgeon concluded that the surgery was unsuccessful and would likely need to be repeated because, *inter alia*, Mr. Perdue had no access to rehabilitative medicine.

291. It is most respectfully submitted that the above-referenced policy allowed for, resulted in and was the driving force behind the deprivation of Mr. Perdue's rights, to wit, the deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights and/or punishment in violation of his Fourteenth Amendment rights as described above.

**WHEREFORE**, Plaintiff, Phillip Perdue demands judgment in his favor against the Defendants, Defendants Corporal Baker and Corrections Officer Colbreath.

## COUNT 9:

## PHILLIP PERDUE VS. JOHN DOE 1

## 42 U.S.C. § 1983, U.S. CONST. AMEND. VIII; US. CONST. AMEND. XIV

292.     Plaintiff reincorporates all preceding paragraphs.

293.     Defendant John Doe 1 was employed as a therapist by Delaware County, Pennsylvania and serviced the inmates at George H. Hill including Phillip Perdue.

294.     At all relevant times, Defendant John Doe 1 was acting under color of law and is sued in his individual and official capacities.

295.     Defendant John Doe 1 knew or should have known that Mr. Perdue needed rehabilitative treatment above and beyond the consultative sessions described above.

296.     It is alleged that while acting under color of law, Defendant deprived Mr. Perdue of a right under the U.S. Constitution, *to wit*, his Fourteenth Amendment right to be free from punishment as a pretrial detainee and/or his Eighth Amendment right to be free from cruel and unusual punishments.

297.     Nevertheless, Defendant John Doe 1 did not provide said services.

298.     The conduct of Defendant John Doe 1 amounted to punishment of a pretrial detainee in violation of the Fourteenth Amendment insofar as he denied Mr. Perdue access to medical treatment.

299.     Alternatively, and insofar as Defendant John Doe 1 was aware of Mr. Perdue's serious medical issues, his conduct amounted to deliberate indifference to the same in violation of

the Eighth Amendment to the United States Constitution.

**WHEREFORE,** Plaintiff, Phillip Perdue demands judgment in his favor against the Defendants, Defendants Corporal Baker and Corrections Officer Colbreath.

## COUNT 10:

## PHILLIP PERDUE VS. SIDDHARTH SAGREIYA, M.D., SUSAMMA VARGHESE, R.N., CONSTANCE ORI CHISOM, CRO, BANG QUANG, R.N. AND SIGY GEORGE, CRNP

## PROFESSIONAL NEGLIGENCE

300.     Plaintiff reincorporates all preceding paragraphs.

301.     At all times pertinent hereto Defendants Sagreiya, Varghese, Chisom, Quang and George professed to possess the requisite skill, training, knowledge and judgment in the field of nursing and medicine and provision of health care services to provide proper and reasonable care for the health care needs of Plaintiff.

302.     Defendants Sagreiya, Varghese, Chisom, Quang and George at all times pertinent represented to the Plaintiff that they devote full time and professional attention to the provision of competent health care services for a fee.

303.     At all times pertinent hereto, Defendants Sagreiya, Varghese, Chisom, Quang and George provided health care services and medical care to Plaintiff.

304.     At all times pertinent, Defendants Sagreiya, Varghese, Chisom, Quang and George had a duty to undertake and provide care to Plaintiff.

305.     On numerous occasions over an extended course of time Plaintiff sought the care of Defendants Sagreiya, Varghese, Chisom, Quang and George for referrals, consults, pain and discomfort, and worsening symptoms.

306. At all times pertinent hereto, Defendants Sagreiya, Varghese, Chisom, Quang and George failed to provide reasonable medical care and treatment to Plaintiff in breach of the applicable standard of care.

307. At all times pertinent hereto, Defendants Sagreiya, Varghese, Chisom, Quang and George breached the aforesaid duty of care by committing acts of negligence and pattern of acts set forth in the following paragraphs:

    a. failing to accurately complete documentation to reflect the Plaintiff's history, treatment, and needs;

    b. failing to formulate, adopt and enforce adequate rules, policies and procedures to insure quality care for patients;

    c. failing to treat or order orthopedic consultations, orthopedic surgery, and/or diagnostic tests to treat Plaintiff's injuries in a timely manner;

    d. failing to take proper and reasonable cognizance of Plaintiff's repeated and consistent complaints of pain and other complaints to render or secure appropriate medical care;

    e. failing to apply or employ available means, methods and tests to properly determine and treat Plaintiff's injuries and need for medical care;

    f. failing to perform the necessary surgical repair of Plaintiff's injury in a timely fashion as to avoid worsening condition of the extremity;

    g. failing to avail themselves of the scientific means, equipment and facilities available used to collect sufficient information needed to make a diagnosis;

    h. failing to adopt appropriate policy, protocol or procedures needed to provide reasonable medical care to patients including Plaintiff, as was their

duty to provide.

308. As a result of the aforementioned acts and omissions of the Defendants, Plaintiff has suffered damages as set forth above.

**WHEREFORE**, Plaintiff demands judgment against Defendants Sagreiya, Varghese, Chisom, Quang and George for compensatory damages, as well as such other and further relief as the court deems just and proper.

Respectfully submitted,

**FRIEDMAN & LEVIN ASSOCIATES**

By: */s/ Craig R. Levin*
  CRAIG R. LEVIN

*/s/ Jason Javie*
JASON JAVIE
Attorneys for Plaintiff
Two Penn Center
Suite 900
1500 John F. Kennedy Boulevard
Philadelphia, Pennsylvania 19102
(215) 567-7642
(215) 567-9145 (fax)
*jason.javie@crllaw.com*

Date: July 13, 2020

# VERIFICATION

The undersigned states that he/she is the plaintiff herein and verifies that the statements made in the foregoing  are true and correct to the best of his/her knowledge, information and belief; and that this statement is made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

X _____
Signature